Good morning. May it please the Court, I'm Daniel Kaplan. I represent the appellant, Gordon Hall, and I'm going to watch the clock and try to save time for rebuttal at about two minutes. Your Honors, the crux of the first claim that is raised in this appeal, if I may use a little demonstrative exhibit here, is that there is a fundamental difference between the type of thing I have in my left hand and the type of thing I have in my right hand. In my left hand is a $1 million bill. This is the closest analog I could find to what's described in the Howick case. In that case, it was a $100 million bill and a $500 million bill. It's just something I pulled off the Internet, but it makes a point about the fictitious instrument statute. And in my right hand is a copy of the actual — one of the actual money orders Mr. Hall was convicted of passing to the IRS. The fictitious instrument statute, Section 514, as explained in Howick, was enacted to address items like this. It has a strong family resemblance to actual currency. It has the bells and whistles, the formatting, picture of a president, et cetera, et cetera. But there is no actual $1 million bill. There has never been an actual $1 million bill. I can't see the picture very well. Who is the president? This is Barack Obama. And this appears, by the way, this appears to be a novelty item which was printed at some point to celebrate perhaps his election. So I don't think I can be prosecuted for holding this. But the point is, as Senator D'Amato explained in the Legislative History, there was a loophole because the counterfeit statute does not allow prosecution for passing something like this because it's not a counterfeit of a $1 million bill because there has never been an actual $1 million bill. So they created this fictitious instrument statute to go after items like this that have a strong family resemblance and could fool the credulous. This, on the other hand, is something that we all recognize as something that does exist. It's a money order. As all the testimony at the trial showed, it's a worthless money order because if you look, if you analyze the actual digits that are listed on it, you can determine with some study that it's worthless because it refers to a nonexistent account. What's the difference between fake and worthless in the document in your right hand and fake and worthless in the document in your left hand? Well, I question when you say the word fake. Well, you can use fictitious if you like. Okay. So fictitious, as described in Howick, in other words, what the statute applies to, is something that bears a strong resemblance to something, to an actual financial instrument, but is not actually what it — there is no actual version of this. There is no actual $1 million bill. Doesn't that item in your right hand bear a resemblance to a true document? More than that. It is an all-pertinent — it is a true — this is a true financial instrument. The expert, Mr. Kerr, testified — I counted seven times where he says — I would have used the word fake. Well, again, the question of what makes it fake, what this Court said in Howick is that if it's fictitious, if it appears to be an instrument, but it actually does not resemble a real financial instrument, it just bears a family resemblance. Mr. Kerr said seven times various iterations of this has all the necessary elements of a money order. This has everything you need to be a money order. Is it accurate to say that's not real? Again, you're putting another term into the mix. Fictitious is what this — bless you, Your Honor. Fictitious is what the statute requires. And my essential point and the leading claim here is this is not fictitious, it's worthless. It could be used perhaps to try to defraud somebody, but it's not fictitious because money orders are real things. The world is full of them. We've probably all used them. It's very much like, as I said in the brief, the Morganfield case out of the 11th Circuit where these checks were created and they had all the elements necessary to be checks, but because they were representing a fake company paying to a fake person signed off on by a fake person, everything about them was fake, if you want to throw those kind of terms into it. But a check is not fictitious. The world is full of checks, just like the world is full of money orders. So your argument is that a fake money order can never be false or fictitious? Again, you're throwing the word fake into it, and I'm not exactly sure. Now, you can use fictitious if you want. Is it your argument that a fake money order can never be fictitious? If a document has all the elements required to be a money order, which Mr. Kerr said seven times it did, it can't be fictitious. It can be worthless. It could be the basis for perhaps other types of criminal charges. It's not my place to say what, but in absence of Federal statutes to charge people with violating is not generally a major problem with three felonies a day and whatnot. So the jury disagreed with your argument. The jury accepted the government's theory, and I believe that the government's theory simply does not correspond to what this Court said in Howick. Mr. Kerr got up on the stand and was asked, you're the expert. Tell us as the expert what is fictitious and what makes this fictitious. And he said things that had nothing whatever to do with Howick. He said if you pick up a piece of paper and make up your own homemade $10 bill, it's fictitious. That's absolutely not what Howick says. That's the opposite of what Howick says. If you make your own homemade $10 bill and it's convincing and you pass it off, it sounds like counterfeiting to me. The statute was created to deal with things like this that the counterfeiting statute doesn't reach. There really are $10 bills. And then he said I can see this as fictitious because when I look at the account number, I know that's the Federal Reserve Bank of Atlanta and they don't have accounts that individual taxpayers can draw upon. Again, nothing to do with what Howick said makes something fictitious under the statute. So, yes, the jury accepted on a premise that was simply not consistent with what this Court has said the statute reaches. There's another flaw, of course, in that the money order doesn't purport to be issued under the authority of the United States. And I would say that there was a case that came out in the course of the briefing, the Murphy case from this Court. I don't follow that at all because the money order says pay to the order of the United States Treasury? Yes. So you say that's not under the authority of the United States? No, because the authority that's claimed on here is Mr. Hall's authority to draw upon this supposed secret bank account. How about the drawee being Timothy Geithner, Department of the Treasury? And he's the one. He's directing the drawee to make the payment to the Treasury. Right. So, again. I think you're close on the first argument. You're not very close on this one. Okay. And I can see that Murphy appears to undermine that second argument. The third argument generally under the sufficiency component of this case is that there is no logical train of inference that leads to the conclusion, beyond a reasonable doubt, that Mr. Hall intended to actually defraud. Either he believed this would legitimately pay his taxes, or he was trying to do a thumb in the eye to the IRS. Neither of those amounts to an attempt to defraud. But I guess at this point I can reserve some time for rebuttal unless there's an imminent question. Why don't we hear from the government and then you've got some time. Okay. Edelstein. Good morning, Your Honors. My name is Monica Edelstein. I'm an AUSA from the District of Arizona. Your Honors, the government would submit that the instruments in this case, the fictitious financial instruments in this case, are precisely the type of instruments that Congress intended to criminalize under the statute 514. Appellant seems to be hung up on the use of this phrase, money order, that was attached to the top of these instruments that Mr. Hall submitted to the IRS. The key inquiry, of course, is not what the documents looked like, but of course their actuality. It's irrelevant what the defendant and his co-defendants put on the top of these instruments. They could have labeled them anything, site drafts, promissory notes, currency. That is not part of what is relevant in the inquiry under 514. And it's not the government's burden under 514 to prove that a money order as a financial instrument themselves are false and fictitious. The inquiry that is relevant, the important part of the inquiry, is whether the instruments that were charged, the ones that were made by the defendants in this case, they just simply happened to be labeled money orders or in and of themselves false and fictitious. In other words, writing money order on an instrument does not make it a real money order. But in creating an instrument here to look like a real money order, when in fact they were simply worthless documents created out of whole cloth, this is what makes them false and fictitious, that they were simply created out of nothing. This brought these particular instruments into the category in the class criminalized by 514. What's the difference? I should know this, Nancho, but I do not. What's the difference in terms of proof, punishment, et cetera, between charging this as a false or fictitious or charging this as a counterfeit? Your Honor, off the top of my head, I don't know precisely what the difference in statutory structure are. However, I would note that there is no precedent in this circuit or elsewhere that says that a document or an instrument has to fall under one category or other, fictitious or counterfeit, to be charged. What's relevant in this case, of course, is that the types of documents we have, the instruments we have, fall precisely into the category of 514, thus making it appropriate to charge these particular instruments under that statute. But I gather that the argument made here, at least implicitly, is now, I can be corrected by your adversary, but I think I understood him implicitly to concede that if this had been charged as a counterfeit, the argument would go that argument would go away. Your Honor, whether or not they could be charged under the counterfeit statute is an entirely separate argument. What they can be charged under and what they are in this case, these two monies, are false and fictitious. They are, to the point with respect to, I think the Murphy case puts to bed any indication that on the face of these, they couldn't be, the jury could not infer that they were issued under the authority of the United States. The important thing to also note is there are no money orders issued by the Department of Treasury. This simply doesn't exist. And it goes back to the original point that it doesn't matter what the defendants put on these particular documents. It is the characteristic and indicia indicated on them that pulls them within the false and fictitious statute under 514. With respect to the Howick case and the Solomon case, these are the two seminal cases in the district with respect to the third prong, the no intent to defraud. And Howick instructs that indicia of negotiability could go to the intent to defraud and, of course, in this case, we had substantial indicia of negotiability. There were routing numbers on these checks. Breyer, I couldn't help thinking that this whole scheme seems so bizarre, to pay your taxes, $868,000, with a fake money order drawn on an account of, I guess, Timothy Geithner, United States Treasury. But it's from a person who, I guess, considers himself a sovereign citizen? That's correct, Your Honor. I mean, I wonder if this is more in line of a protest rather than an intent to defraud the government. Could you comment on that? Yes, Your Honor. With this ---- I mean, he did call the government and say, by the way, I'm sending you a money order for $868,000. Very nice of him to do that. $868,000. And, in fact, this differed from Mr. Hall's conduct prior to. He did send a number of frivolous documents and letters and that type of thing to the IRS, to this particular revenue agent, prior to this incident. However, in this instance, he phoned the revenue officer. The revenue officer testified to this extensively at trial. He asked him for the precise amounts of money that were owed, and then he issued and said payment will be forthcoming. He communicated that. And thereafter, two checks, these two money orders, did arrive, along with the IRS payment voucher which accompanied them, which is common when you are paying off any kind of debt. This payment voucher is a form that's utilized. And Solomon instructs that the context of an instrument as presented could be used to infer the intent to defraud. And, of course, in this case, we also need to pursue Judge Frontier's question. I mean, he can't possibly have believed that the government was going to accept this for payment of his taxes. That is to say that he cannot possibly have expected that this would work. And why isn't this actually a protest rather than an attempt to defraud? Well, frankly, Your Honor, it's not an element of the offense what the defendant thought about what the success or the lack of success of this particular method. We do know from the record that he did subscribe to sovereign ideology and that sovereign citizens were -- Do you have a decent case? Although not mentally incompetent, as I would note for the ---- But this is not your ordinary fraud story. I mean, we deal with fraud cases all the time. Yes, Your Honor. And we deal with these sovereign State protester variations all the time, too. But this does not strike me as an attempt to defraud. To the extent there was extensive evidence on the record, Your Honor, that Mr. Hall was not just doing this himself in a singular incident. This was an operation. This was a business. Well, I understand that. We didn't charge him for that. Correct, Your Honor. But that's relevant information to ---- for the record, for the intent to defraud, going to his intent to defraud, that he operated a business. He charged other people for this service. Yes, he was defrauding them. Yes, Your Honor, he was. Defrauding them, as well. But why didn't you go after him for that? Well, Your Honor, when it comes down to it, the ---- there are a number of cases around the country of these other sovereign individuals who were clients of Mr. Hall. I can't speak to the status of these particular cases, but there are ongoing ---- But, no, I think I'm understanding you correctly, that those are cases against the other people who are trying to do what Mr. Hall has done, rather than a charge against Mr. Hall for deluding them into thinking that this might work. That's correct, Your Honor. Yes. So it seems to me that if we're talking common sense instead of law, that the person or the people he's trying to defraud are the people he's doing business with, saying, hey, this is going to work. There's zero chance that this document sent to the United States government would actually operate to pay his taxes. Yes. And the government would submit that that the plausibility of the success of passing fictitious financial instruments is not an element of the offense. It does not matter what the receiver thought of the document. Is intent an element of the offense? An intent to defraud is, Your Honor, yes. And we would submit that the method by which Mr. Hall generated, produced, and submitted these indicate his intent to defraud in the context of the evidence of his steps prior to submitting the two vouchers or two money orders, I apologize, in this case. He's a ---- he was sophisticated in certain ways, and he was sophisticated in the way he produced this document with certain specialized machines. So I wonder, I mean, this ---- but he ---- it seems to me he must have known this was dead on arrival. It just wasn't going to work. As sophisticated as he was in producing this and other documents. So I wonder, again, if he really intended to defraud the government or if this was basically protesting. I would note, Your Honor, that Mr. Hall very clearly subscribes to a movement, the Sovereign Citizen Movement, which this Court has recognized in cases such as Johnson and Neal and others, is a proactive group that attempts to defraud the government or frustrate or protest against the government. And in this context ---- Scaliaro ---- frustrate or protest are really very different concepts from defraud. ---- Yes. And in this case, Your Honor, with the facts that we have in this case, the government believes it did establish an intent to defraud with respect to the passing of these two documents. With respect to the overall intent of the Sovereign Citizen Movement, I certainly can't speak to what the objectives are of this movement. But Mr. Hall was running a business as a sovereign citizen and charging individuals money to continue to perpetrate these particular types of frauds, including passing fictitious money orders to various IRS offices all over the United States. I see that I'm ---- Well, we've got one last question that does bother me. Yes, Your Honor. This does not go to the heart of the case. We've got an argument as to conditions of probation. There are several of them. It's all reviewed on plain error. It was not ---- I understand that wasn't the focus of the argument. But there's one in particular that bothers me, and that is he's not supposed to associate with felons. Well, he's got two children who are felons. And the ordinary rule is that if you're going to impose as a condition of probation, you can't visit family members. You've got to justify it. You know, it's not that you can't impose it, but you've got to say it pretty clearly on why. That wasn't done here. So why did we not send that back for some sufficient explanation, or maybe not for some sufficient explanation, but for the judge to focus on that, because once the judge focuses, the judge may not impose that as a condition of probation? Yes. Your Honor, you do not have to remand a case unless there's plain error in the circumstance. And the government would argue that there was no plain error or a demonstration of prejudice in this case. And as Wolfchild ---- How can there not be prejudice if there is a condition that precludes him from associating with his own family members? Your Honor, the case, the seminal case in this district is the Wolfchild case. And even within Wolfchild, the court acknowledges that there is no per se rule that a case in the ---- a case that requires this kind of restriction of familial rights is not justified in any ---- in every case. There's no per se rule that there's a prejudice there. But for it to be imposed without any discussion or any thought given to the fact that this is preventing him from associating with an individual who lives in his home is very troubling. These are not minor children. These are two adult children who are felons. And any harm to the defendant or prejudice to these individuals is entirely speculative. The defendant will not be released from prison under his current sentencing scheme until 2033. There's no way to know ---- Do we know of the current incarceration status of the children? Yes. They are both out of prison at this time. Mr. ---- So what that means, then, is that this condition of probation says does it apply to when he's in prison as well or only after he gets out? Only when he gets out, Your Honor. It's a condition of supervised release. So it would be post-incarceration. So they can come see him in prison, but they can't see him when he gets out? That's effectively how the ---- What bothers me about this one, and I don't think you should be objecting very strongly, because it's precisely because it is plain error review, I don't think the judge thought about it. Maybe the judge did. Maybe the judge didn't. Once the judge thinks about it, the judge can do what he or she thinks best. But I'm not sure the judge thought about it. I can't remember who the judge was dealing with. Judge Wake. Judge Wake. Once he thinks about it, he can do what he thinks best and then tell us why. I would note that Judge Wake did sentence the son, who was the co-defendant in this case, preceding his sentencing of Mr. Hall, and did make an extensive record with respect to Mr. Hall involving his children in the crime at issue both here and in other circumstances. But weren't these conditions imposed as pretty much standard conditions? Yes, that's correct, Your Honor. That's kind of boilerplate. That's correct. I'm sorry. I'm sorry. Go ahead. I was looking at a case I wanted you to comment on, which is the Wolfe child case. Yes, sir. Which considers this a fundamental right. It also articulates that there is no per se rule and that given the circumstances of any particular case, it does recognize a fundamental parental relationship right. That's correct, Your Honor. But in the imposition of restrictions to that right, it does not articulate and it acknowledges, in fact, that there's no per se rule that a court does not have the justification in certain circumstances to impose a restriction. I do agree with Judge Fletcher. I'm not sure that the district judge gave this very much thought. It's just a routine thing that's signed off on. But if he did, he might be able to modify it. He might be able to set certain guidelines. Yes, you can see your children under these circumstances. But a complete ban, I think, is where the problem lies. And I also have a second issue, which is no large purchases allowed. Yes, Your Honor. That is just kind of so broad that someone like the defendant here wouldn't know what a large purchase is. Does that mean he can't buy a car? Does it mean he can't buy a refrigerator? Does it mean he can't buy an air conditioner? What is a large purchase? So I think that that's got to be refined also. Otherwise, any probation officer can just bring him on a probation violation because that officer believes that's a large purchase. And the government's response to that would be, Your Honor, that this was not objected to and it's forfeited error and it doesn't rise to the level of plain error in the context of this case. Okay. You wouldn't have any problem if large purchases were defined, let's say, by a numerical sum. A large purchase is anything in excess of $200 or something like that? I'm sorry. I didn't understand your question. I mean, if it were refined, for example, by the judge to say a large purchase is a purchase not to exceed, that is over $500, let's say, or $1,000. Something specific, because this is very troubling to me, because now it's simply within the whim of a probation officer to determine whether there's a violation or not. Yes, Your Honor. And I believe that that's correct. There have been modifications to the standard conditions, including this one, recently in Arizona. But I don't know that it goes specifically to Your Honor's point. Okay. Thank you. Okay. You've saved some time. Thank you, Your Honor. The government just stated that what he, quote, what he thought is not an element to the offense. That's not correct, because the statute requires as an element the intent to defraud. If, in fact, what he was doing was a thumb in the eye, a protest, and trying to irritate the IRS, there is perhaps a statute for that. The trial counsel referred to 18 U.S.C. section 7212. I'm not saying he violated it, but that was raised as a possibility. The fictitious instrument statute, however, is a different matter. Was the jury properly instructed in the sense of the intent that was required? They were instructed that he had to have the intent to defraud. The government says that I'm too focused on the title at the top that says money order. Well, what I'm focused on is not just the title money order at the top, but the fact that the government's expert testified seven times this had all of the criteria to be an actual money order. It had every single element of a money order. That makes it a money order. The government refers to it being made up out of whole cloth. Well, their expert also testified two times that you can pick up a blank sheet of paper and a ballpoint pen and write out all the elements that make something a money order, and it is a money order. The closer you are to the real thing, the more likely it is that he intended to defraud, wouldn't you say? Well, for that element of the statute, perhaps, yes. But it also requires that it be fictitious. And it makes it less and less fictitious, even if it's making it more and more of an attempt to defraud. So I'm not taking a position on whether it could be prosecuted under a counterfeit statute or any other statute. I'm saying under Howick, the statute does not apply to something that is a real existing financial instrument, such as something that has all of the elements of a money order, again, referring to the Morgan Field case. The last thing is there was a comment about the Treasury doesn't issue money orders. Well, again, that doesn't make something not a money order. It may make a particular item worthless, a worthless money order. But the Treasury could decide. Well, the Treasury doesn't issue million-dollar bills either. Correct. Correct. But if the Treasury started deciding to issue money orders tomorrow, they would be worth, they would be valuable money orders. Same with the million-dollar bill. That's true. But there would never have been a million-dollar bill before they started doing that, whereas there have been money orders for many, many, many years. But not issued by the government. That's what the testimony was. And, again, it makes it worthless, but it does not make it not a money order. Okay. Because it has all of them. But the jury couldn't determine otherwise, then. No, because the statute, because this Court declared what the statute applies to, and the jury can't change that. All right. Okay.  Thank you, Your Honor. Thank both sides for your arguments. The United States v. Hall, submitted for decision.
judges: Fuentes, W. Fletcher, Rawlinson